UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LONDON DIVISION

CIVIL ACTION NO. 04-392

MICHAEL WHITE                                                                           PLAINTIFF

v.                              **OPINION AND ORDER**

KENTUCKY WEST VIRGINIA GAS
COMPANY, L.L.C.                                                                         DEFENDANT

\* \* \* \* \* \* \* \*

On September 19, 2005, this court conducted a bench trial regarding the Plaintiff,

Michael White's, claim that Kentucky West Virginia Gas Company, L.L.C. ("Kentucky West")

violated a 2003 agreement (the "Agreement") concerning remediation of property damage on

White's land in Perry County, Kentucky in exchange for the granting of right-of-way onto his

property.  After conducting the trial and considering the evidence, this court finds in favor of

White and awards him the sum of $115.000.

## I. RELEVANT FACTS

After hearing all of the evidence at trial, the court notes that the vast majority of facts in

this case are undisputed.  At some point prior to July 4, 2003, two gas lines owned by Kentucky

West and located on White's property, began moving down a hill, causing a "slip" which created

damage to the land.  Because the slip not only created problems for the gas lines and White's

land, but also put other homes in the area in danger, Kentucky West approached White about the

possibility of being granted a right-of-way onto the land so as to stabilize the "slip" area.  As

consideration for the right-of-way, Kentucky West agreed to remove the slip material, compact

and remove the material left in the hollow where the slip occurred, construct a rock-lined

drainage ditch in the hollow, hydro seed the areas disturbed and provide a gas tap on the new pipeline.  (Pl. Ex. 1).

Once the Agreement had been entered into, Kentucky West began performing its obligations under the contract.  The two parties are not really in disagreement on what amount of work then took place.  Both agree that Kentucky West came in and removed at least part of the slip, but did not finish the job and clear the entire slip off of the land.  Additionally, both parties produced witnesses who testified that Kentucky West has not fully completed the work required pursuant to the Agreement.  Specifically, Gary Greer, an employee for Kentucky West, testified that "the job has not been completed" and that a slip still exists which the company "need[s] to go in and address and make that stable."  (Tr.Trans. 114, 116). Thus, while both parties disagree as to the extent of the remaining work, both agree that more needs to be done.

**II. ANALYSIS**

After reviewing the evidence, it becomes clear that the primary determination for this court is one more legal than factual.   This court has been asked to determine exactly what the Agreement between the two parties required from Kentucky West.  It is clear that the Agreement gives an enumerated list of duties which Kentucky West is required to undertake.  Most of these duties and the degree to which they have been completed are not currently in dispute.  What is in dispute is whether and to what extent Kentucky West has fulfilled its obligation under the contract to "remove and stabilize the slip material."   At various times in its post-trial memorandum to the court, Kentucky West seems to argue both that is has and has not completed this obligation under the Agreement.  *See e.g.* ("Kentucky West completed or substantially completed its obligations under the agreement....")(Rec. 52, p.5); ("Kentucky West must be given

an opportunity to complete portions of the agreement which may not have been completed.  Both Kentucky West and its contractors have indicated that they are willing to complete the agreement.") (Rec. 52, p.11).  However at trial, no such discrepancy existed as the primary testimony on the issue came from a Kentucky West employee, who testified that more work is required pursuant to the Agreement.   In addition, Kentucky West asserted that it was willing to perform such work, and that the only hindrance was Mr. White's decision to keep the company off the land.

Thus, contrary to much of what is argued in the post-trial memorandums, this court finds that there is little dispute about whether Kentucky West has completed its obligations and finished the project contemplated under the Agreement.  Clearly, it has not.  But the question remains as to the amount of work left to be performed.   The Agreement simply states that Kentucky West is to "remove and stabilize the slip material."  Neither party introduced evidence as to what the industry standard is for the removal and stabilization of slip areas and it is unclear if such a standard even exists.  The land as described by both parties is unique and part of the difficulty in this case is that neither party seems to be exactly clear as to the precise nature of the expectations and responsibilities created by the Agreement.  One area of dispute illustrates the difficulty.

When a slip is removed, the land then must be compacted in order to regain stability.  Both parties accept this premise, but have expressed divergent views as to the precise compaction rate required by the Agreement.  White contends that the portion of the slip that had been removed by Kentucky West was not sufficiently compacted, thus causing further slip damage.  He argued that the area where the slip occurred should be completed to a 98% compaction rate, a

rate that in his view is necessary in order to insure stability. Kentucky West contends that because the Agreement contained no specific articulation of the required compaction rate and because no industry standard can be found, it should not be required to "compact the removed material in a specified manner." (Rec. 52, p.6). Rather, because Kentucky West "complied with the express provisions contained in the Agreement," it argues that its obligations are complete.

However this conclusion is simply not tenable. There is no dispute that there is still slip material to be removed. There is also no dispute that at least some, if not all, of the slip area has not been compacted. While there may be no industry standard as to what the correct compaction rate of a slip area should be when located on land such as White's, the Agreement at least assumes that the land will be compacted to a sufficient degree as to make it stable. This is a standard that has yet to be met. While White's compaction rate of 98% may be in dispute, parts of the land have not been compacted at all and Kentucky West has not even shown that whatever rate of compaction done on the land where the slip has been removed has created stability. Thus Kentucky West has given the court no basis upon which to find that it has completed its obligations under the Agreement.

This example illustrates the problem with Kentucky West's arguments concerning the Agreement throughout trial and in its post-trial memorandums. While correctly pointing out that White cannot show with certainty that his elevated requirements for performance under the contract are controlling, Kentucky West cannot show that it has sufficiently performed its obligations under even the most basic reading of the contract. Kentucky West cannot reasonably argue that the Agreement does not require at least some minimal standard of performance. Even if there is no industry standard as to what the sufficient compaction rate is for the stabilization of

-4-

a slip, it must at least be removed to a degree so as to stabilize the land and assure that no further slippage occurs. This has not happened on White's property, a fact that a Kentucky West employee essentially acknowledged at trial.

Thus it is clear to this court that the slip has not been "remove[d] and stabilize[d]" as required by the Agreement and that Kentucky West has violated its specific terms. As for the question of damages, Kentucky West articulated at trial and in its filings before the court, that it is willing to complete the work required by the project if given a reasonable time for completion. Ultimately however, this court believes that this time has passed. The Agreement in question was completed nearly three years ago and Kentucky West had sufficient time during the original work period to satisfy its obligations. The court recognizes the evidence suggesting that this was an abnormally rainy season and that completion was made more difficult by such factors, but also finds that this was not sufficient to excuse complete performance.

On the issue of damages, White requests $350,000, the amount he claims it would take to completely fix the land to the level contemplated by the Agreement. In arriving at this figure, White relied on an estimate based upon a survey performed by Von Campbell. Campbell did not base his estimate on the language of the contract, but simply determined the cost of removing the slip to the level requested by Mr. White and compacting the dirt towards his specifications. To bolster his claim for this amount, White also presented the testimony of Wayne Caudill, who asserted that he could do the work contemplated by Campbell for $350,000.

In order for White to recover any potential damages, he must prove their level with "reasonable certainty." *See Commonwealth, Department of Highways v. Gent*, 525 S.W.2d 121 (Ky. 1975). Neither of White's two "estimates" of the cost of repairing the land completely meet

this standard.  Campbell's estimate is based upon a calculation of the total cubic yards of the land that needs to be repaired with a proposed price of $6.00 a yard for its completion.  However this estimate is based upon an assumption that the land is required to taken back to a 1:1 slope, an assumption held by White, but not necessarily proven by the evidence to be the industry standards or necessary for stabilization of the land.  Similarly, Caudill's estimate is based upon the same assumption and is not even bolstered with evidence of the calculations used to come to up with the figure.  Thus White has not provided the court with enough indicia of reliability in order to support his damage request.

But even if that amount were reliable, the court would still be hesitant to grant it.  The evidence in this case clearly shows work remains in order to make White's land useable for any significant purpose.  The current value of the property is $110,000, a value that was put upon the property before the slip in question occurred.  White has provided no evidence that he entered into the Agreement in order to raise the value of his property and has not shown that the work done on the slip would have any significant effect on its value.  Thus even if the work requested by White were finished on the property, the value would still be relatively close to what it was before the slip.  The court thus will not order what amounts to a waste of resources, requiring Kentucky West to pay an amount of money, $350,000, that is over three times the value of the property.

However while the damage amount requested may be extreme, it is clear that the land as it is now constituted is not useable by White.  The slip has still not been removed and both parties agree that until this work takes place, there is no substantial use for the land.  Kentucky West has provided no evidence to suggest that the work still needed to be performed, even under

the most restrictive reading of the contract, could be done for an amount substantially under the estimate provided by White.  Thus there is no reason for this court to assume that the slip could be "remove[d] and stabilize[d]" for an amount lower than the current value of the land.  Because the land as constituted is currently unusable and the work contemplated under the Agreement has not been performed, the court finds that the most accurate estimate of damages to White is the value of the land prior to the slip.

Thus the court orders that Kentucky West provide White damages in the amount of $115,000, an amount which includes the value of the land prior to the Agreement and an addition for the passage of time.

It is so ORDERED.

Dated this 30th day of March, 2006.

**Signed By:**

***Karen K. Caldwell***

**United States District Judge**